UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| GEORGE WARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| VS. | )     No. 15-1155-JDT-egb |
| | ) |
| BARBARA CROWELL, ET AL., | ) |
| | ) |
|     Defendant. | ) |

ORDER DISMISSING CLAIMS,
DENYING PENDING MOTIONS (ECF NOS. 12 & 13),
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On June 29, 2015, Plaintiff George Ward ("Ward"), who is currently an inmate at the West Tennessee Detention Facility ("WTDF") in Mason, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Ward's previous incarceration in the Obion County Jail ("Jail") in Union City, Tennessee. In an order issued June 30, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4) The Clerk shall record the defendants as Officer Barbara Crowell, Dr. Rena Terrell, and Sheriff Jerry Vastbinder.

I. The Complaint

Ward alleges that defendants have been deliberately indifferent to his medical needs. (Compl. at 3, ECF No. 1.) Ward has a number of ailments that he contends have not been treated properly. (*Id.*) Ward has a fracture in his left shoulder bone that has not been addressed since

x-rays were taken. (*Id.*) Defendants Terrell and Crowell told Ward that an email would be sent to the U.S. Marshals about his condition; however, it has been two months since the x-rays were taken. (*Id.*) Ward also has been complaining about a tingling/numbness on his index finger, thumb, and middle finger of his left hand. (*Id.*) Ward has not had a physical or check-up about this issue even though his complaints started on either February 7th or 9th 2015. (*Id.*) In April, Ward again asked about it in the kiosk and complained in the presence of Defendant Terrell, but nothing has been done. (*Id.*) Defendant Crowell told Ward that the nurse said to continue taking Ibuprofen and Tylenol; however, Ward believe that this statement came directly from Crowell, not from the nurse, and that Crowell never sent the request to the nurse or the doctor. (*Id.*) Further, Ward has had a pain in his neck since November 2014 that the "Dr. Just looked over," because, he contends, that she felt the Ibuprofen and Tylenol were sufficiently helping with the pain. (*Id.* at 4.)

Ward has been told by Defendants Terrell and Crowell that they have sent emails to the U.S. Marshal, but he has not heard anything. (*Id.*) Ward is tired of the excuses provided by the U.S. Marshal that they will not do anything unless it is a life or death situation. (*Id.*)

Ward also had a knot on his right middle finger that the nurse looked at in January 2015. The nurse measured it and prescribed antibiotics, then said she would continue checking on it; however, she never examined Ward's finger again, and the knot is still there. (*Id.*)

On the first of June, Ward was seen by the doctor for a sore throat. (*Id.*) The doctor prescribed, "Topamex, Pseudafed and a 2-pack,", but Ward believes these medications along with the Lisiniprol for high blood pressure and ibuprofen and Tylenol for migraines are causing him to lose weight. (*Id.*) Ward's stomach now has a very sharp pain with cramps in the right

side and he begins to feel nauseated after he takes the medicine. (*Id.*) Ward told the officer passing out medicine that he would not take the new medication due to the nausea. (*Id.*)

On June 17, 2015, Ward was called out for sick call and inquired about his migraines and a toothache for a crown that fell out and was never replaced. (*Id.*) Ward was told that his gums were not swollen and that could not be the cause of his migraines. (*Id.*) The nurse took Ward's blood pressure and found it to be a little high, so she gave him a dose of medicine. (*Id.*) When Ward asked about the Marshal's response to the numbness in his fingers and the fracture in his shoulder bone, he again found that the Marshals had not said or done anything. (*Id.*)

Ward also alleges that some of the mail he sent out has never been received by the addressee, and some mail that was sent to him has never arrived. (*Id.*)

Ward seeks to have his medical issues taken care of as well as to have internal affairs investigate the medical care given at the Jail. (*Id.* at 5.)

II. Analysis

A. Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

   (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

   (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

3

544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383

4

(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Ward filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that

5

in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

1. *Twombly*

The complaint contains no factual allegations against Defendant Vastbinder. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

2. *Eighth Amendment Claim for Medical Indifference*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). In the case of a pretrial detainee, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished,'" *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000). Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fourteenth Amendment if held in state custody. *Liscio v. Warren,* 901 F.2d 274, 275–76 (2d Cir.1990). *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Even if Ward was a pretrial detainee during the events at issue, the court will analyze his claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of

6

convicted prisoners. *Thompson v. Cnty. of Medina*, 29 f.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).[1]

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 633 F.3d at 383; *Mingus v. Butler,* 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*., at 106.

Within the context of *Estelle* claims, the objective component requires that the medical need be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). "A medical

---

[1] On June 22, 2015, the Supreme Court held, in *Kingsley v. Hendrickson*, 133 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. It is unclear whether or to what extent the holding in *Kingsley* may affect the deliberate indifference standard for claims concerning an inmate's health or safety, which the Sixth Circuit applies to both pre-trial detainees and convicted prisoners. *See Morabito v. Holmes*, 628 F. App'x 353, 357-58 (6th Cir. 2015) (applying, even after the decision in *Kingsley*, the objective reasonableness standard to pretrial detainee's excessive force claims and the deliberate indifference standard to denial of medical care claim). Absent further guidance, the Court will continue to apply the deliberate indifference analysis to claims concerning a pretrial detainee's health and safety.

need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in *Farmer v. Brennan*, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id*. 511 U.S. at 835-36.

Ward complains of a number of medical conditions that he alleges have not been properly treated. The thrust of his complaints are that the medication he is receiving is both insufficient and making him sick and that the U.S. Marshals have not adequately addressed his complaints for treatment. These allegations do not indicate that either Defendant Terrell or Defendant Crowell were deliberately indifferent. Ward did receive treatment for his claims, just not the treatment he wanted. These allegations are more properly suited as malpractice claims than claims for violating Ward's Eighth Amendment rights.

3. *First Amendment Claim for Mail Interference*

Ward does not specify the details for the mail he alleges has gone undelivered. However, the denial of access to mail may, under some circumstances, implicate the First Amendment right "to petition the Government for a redress of grievances," U.S. Const., amend. I, which is made applicable to the states by the Fourteenth Amendment. *See Kensu v. Haigh*, 87 F.3d 172, 175

(6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 822 (1977). The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However,

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X*, 175 F.3d at 391 (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351-53); *see also Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how *Lewis* altered the "actual injury" requirement previously applied by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Ward does not state any injury due to lost or unreceived mail; therefore, he has no first amendment claim.

C.      Pending Motions (ECF Nos. 12 & 13)

On December 29, 2015, Ward filed a Motion for Discovery (ECF No. 12) followed by an Ex-Parte MOTION For Names and Addresses of Defense Counsel on January 11, 2016. (ECF No. 13.) As this case is being dismissed, the motions are DENIED as moot.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Ward's complaint as to the Defendant for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to Amend is DENIED because the deficiencies in Ward's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Ward would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2)

11

by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

   s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE